## Millwood Coal & Coke Co., Plff. in Err., *v.* J. B. Madison et al.

A company which, although not doing general business as carrier of passengers, uses a track, an engine and cars, to carry its workmen to and from their work, and allows other passengers to ride, and receives payment for such carrying, is bound to keep its means of transportation reasonably safe and sufficient, and is liable to a person who, while carried for pay on its engine, is injured by a defect which might have been prevented.

(Decided October 19, 1885.)

Error to the Common Pleas of Westmoreland County to review a judgment for plaintiff. Affirmed.

The plaintiffs below were J. B. Madison and his wife, and the

NOTE.—One may become a carrier in Pennsylvania though it is not his principal, but merely incidental, business. Gordon v. Hutchinson, 1 Watts & S. 285, 37 Am. Dec. 464.

As to whether railway employees. are passengers in riding to or from

object of the action was to recover damages for causing the death of their son. The general facts, as presented on behalf of the plaintiff and found by the jury, were these: The company was not a railroad, but a coal mining company. Its mines were located at a spot 3 miles north of the Pennsylvania Railroad, at Millwood station; and, to gain access to a market for its coal, it built a narrow-gauge railroad from its mines to the Pennsylvania Railroad, at Millwood, purchased two engines of proper size and power, and a number of coal cars suitable for hauling and shipping coal. There was no serious dispute that the company employed careful and competent persons to take charge of and run these engines, and manage the coal trains. The employees of the company who worked in the mines and shops resided along the line of the coal road, or at Millwood station. It was the custom of the company to haul such of its employees as desired to ride, to and from their work, for which they were charged 5 cents. Tickets were sold at the mines by the superintendent to the employees at this rate, and the price thereof, if not paid in cash, was charged up to the employee and taken from his wages at the end of the month. If the employees did not provide themselves with such tickets, they could pay the price in cash to the conductor of the coal train or have their fare returned by him to the office and charged to them. The immediate members of the families of such employees were also permitted by those in charge of the trains to ride upon these tickets without objection. No tickets were sold to persons other than employees; but if any person outside of the employees of the company desired to ride on the trains, he was allowed to do so by paying 10 cents. The trains usually consisted simply of the engine and a number of coal cars; and the employees or other persons desiring to ride generally rode on the engine.

The defendant in error was in the employ of the company. On July 26, 1882, his son, aged about eleven years, and his daughter, desiring to go to Millwood, signaled the engineer of the company's coal train to stop and let them get on. He did so, and they got on the engine. When the train started the conductor came forward to the engine and received from the girl an employee's ticket in the name of her father. She also testifies that her brother had a like ticket, but before the conductor

their work, see editorial note to Texas & P. R. Co. v. Smith, 31 L. R. A. 321, presenting the authorities on that question.

had time to ascertain whether or not the boy had a ticket, the disaster occurred. The fireman opened the door of the fire-box and began to poke the fire, when there suddenly issued a large quantity of steam and scalding water. Both the fireman and Miss Madison were somewhat injured, while the brother of the latter was fatally scalded. It afterwards appeared that in the side sheets of the fire-box, which separate it from the boiler, there was an iron plug projecting into the fire-box. This plug had been either blown out by the steam, or had been accidentally struck by the fireman's poker and knocked out, thus allowing the steam and water to escape. This plug was in the fire-box when the engine was last previously overhauled, and was then apparently secure and safe. There was no evidence that its condition had changed since that time, or that the engineer or the officers of the company knew or suspected that the plug had become insecure.

The charge of the judge on the trial embraced the following instructions, stated in substance:

Charge. The cause of the accident seems to have been the expulsion by steam or other means, of a plug in the back of the fire-box, which, when knocked out, allowed the steam to issue forth. . . . Under the evidence, it will be an important question for you to discover whether this plug was in such a safe condition as it ought to have been, to allow riding with safety on the engine. Did it burst from its fastenings and the explosion occur, by reason of the negligence and want of attention of the company in inspecting and keeping in proper repair and proper condition their machinery? Or, did this plug burst out and the explosion occur from one of those unavoidable accidents and causes against which human prudence, caution, and foresight could not anticipate nor provide? If it could have been provided against by prudent and proper care, the defendant would be negligent. If it was an accident which prudence and foresight could not prevent, then it could not be charged as negligent.

Then, again, it is contended by the defendant, that if this occurrence did result from any negligence of its employees, the plaintiffs could not recover here, because their son, the deceased, contributed himself to the injury, by riding on the locomotive where the explosion took place, when it was a place too dangerous for him to ride.

It is contended further by the defendant that it is a coal company, and not a common, passenger-carrying railroad, and not responsible for injury to a person getting on its locomotive.

Thus we have the contentions of the case.

It may be true that the defendant was not a common, passenger-carrying company; yet we have it in evidence from the superintendent and from others that it did carry passengers; that it authorized the persons in charge of the railroad train to carry passengers,—to carry its employees, and, the superintendent says, adult members of the family, and also other outside passengers, telling them what to charge, and requiring them to turn in the tickets and the money thus collected to the office of the company; and that if the miners or employees did not have money or tickets, the company would charge it up in its account against the miners, and deduct it at the end of the month when they settled. Now, if you believe that it did that, and that, furthermore, the instructions to the superintendent and to the persons in charge of the train were to carry them in a passenger car if there was one; if not, to allow them to get on the locomotive, it was subject to the legal rules which control companies in carrying passengers upon its roads. While there may be some modification of that degree of excellence and safety of machinery required of companies whose business it is exclusively to carry passengers, or who have cars and machinery exclusively for that purpose, when sought to be applied to such a company as the defendant, yet, if a company situated as the defendant is, does undertake to carry passengers with its machinery and on its road, it is controlled by the same legal principles as passenger-carrying companies (quoting from Delaware, L. & W. R. Co. v. Napheys, 90 Pa. 141; Sullivan v. Philadelphia & R. R. Co. 30 Pa. 234; 72 Am. Dec. 698; Duff v. Allegheny Valley R. Co. 91 Pa. 459, 36 Am. Rep. 675); and is bound to furnish suitable cars, engines, and tracks, but is not responsible for those unavoidable accidents that will occur, and against which human foresight cannot provide.

It is contended by the defendant that there was what is called contributory negligence; that the boy was in a place where he ought not to have been, and that his own act put him in position to receive the injury. How was this? We are told that the rule is that where a passenger gets on a baggage car or an engine and suffers an injury, there can be no recovery for it. Why?

Because he is in a place of imminent danger, and no reasonable person would thus expose himself. This is the law in Pennsylvania where there is a rule of the company which prohibited the passenger from riding on such cars. Was there any rule made by the board of directors prohibiting anybody from riding on the engine or the freight cars, or was it left entirely under the direction of the superintendent to give his instructions to his engineers and conductors upon these trains? We find no evidence offered in this case as to any rule upon that subject. What was the practice? . . . You will recall how witnesses testified, and all the facts are for you.

Now, there is another important matter. If the instructions of the company allowed those in charge of the train to take men on the engine and collect tickets from them, what was the condition of the engine? We think that if they were received on the engine it was the duty of the company to see that it was reasonably safe. It was required to apply to it sufficient vigilance and oversight to make it safe and secure for passengers to ride upon it. . . . It is for you to pass upon all these questions.

Then as to the boy getting upon the engine. Was it, or was it not, a safe place for the boy? Was it a safe place for the men in charge of the train to put the boy and to put passengers? That is a question for you, under all the evidence. If you believe and find, from all the evidence, that it was a reasonably safe place; that the engine was in proper condition, was in that reasonably safe condition that the law requires it to have been kept in; and that this accident was one of those inevitable casualties or occurrences that human foresight and prudence could not provide against, then your verdict should be for the defendant. If not, if the defendant was negligent in placing and in allowing its train men to put men on the engine; in not giving that attention to the engine which it ought to have given; if it could, by reasonable care, foresight, and prudence, have provided against it, and the accident resulted in consequence of negligence, it is otherwise, and it is responsible.

After the charge, the plaintiff's counsel requested the following instruction among others, and it was granted, without any qualification.

5th. That any company undertaking to carry passengers for hire is bound to furnish safe and sufficient means of transpor-

tation for its passengers, and is liable in damages for an accident or injury, the result of a nonperformance of such duty.

The jury found a verdict for plaintiffs for $1,136. The company brought error to review the judgment on the verdict.

*J. A. Marchand* and *Moorhead & Head,* for plaintiff in error, claimed that the company did not come within the very broad rule laid down in Gordon v. Hutchinson, 1 Watts & S. 285, 37 Am. Dec. 464; and cited 2 Redf. Railways, 226; Union P. R. Co. v. Nichols, 8 Kan. 505, 12 Am. Rep. 475; Empire Transp. Co. v. Wallace, 68 Pa. 302, 8 Am. Rep. 178; Pennsylvania Canal Co. v. Harris, 12 W. N. C. 432.

*Jac. Turney* and *S. A. Kline,* for defendants in error.—By actually undertaking to carry the general public for pay, the company assumed the liability attached by law to the business of railroads as carriers of passengers. Gordon v. Hutchinson, 1 Watts & S. 285, 37 Am. Dec. 464.

And whether the contract with its passengers was as a common carrier or not was a question for the jury alone. Fuller v. Bradley, 25 Pa. 120.

The company having directed the employees in charge of the running of its trains as a regular matter of business and duty, to receive and carry passengers on the engine when no passenger car was attached to the train, the deceased, at the time of the accident, was on the engine as a passenger, and whether the engine is a dangerous place to be, is entirely immaterial. The deceased violated no rule or regulation of the company by accepting a place on the engine; it was the only place for passengers provided by the company on that train; he had no choice of places, but was bound to take the place assigned him by the agents of the company, and in doing so it was obligatory on the company, and it behooved it to see that the engine so used was in a "safe and sufficient" condition, and that it was handled with the greatest diligence and care, to insure the safety of passengers. O'Donnell v. Allegheny Valley R. Co. 59 Pa. 239, 98 Am. Dec. 336; Creed v. Pennsylvania R. Co. 86 Pa. 139, 27 Am. Rep. 693.

The defective and dilapidated condition of this engine at the time, and for a long time before this accident, was established by abundant evidence, uncontradicted and conclusive of the fact,

and its use by this company as a vehicle for carrying passengers was gross and culpable negligence, and made it responsible for any injury happening in consequence of its use, to passengers or employees.    Pennsylvania & N. Y. Canal & R. Co. v. Leslie, 16 W. N. C. 321.

PER CURIAM:

The language covered by the 5th assignment of error is not exactly correct, and, taken by itself alone, might mislead the jury.    It is, however, so qualified by the general charge that no harm was done.    All the learned judge intended to say, and the jury must have so understood him, was that the means of transportation must be reasonably safe and sufficient, and not that they must be absolutely so.    The charge is very fair and correct.

We see no error in the record which calls for a reversal of the judgment.

Judgment affirmed.